UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BIRGID H.,[1]

       Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____

DECISION & ORDER

21-CV-0253MWP

**PRELIMINARY STATEMENT**

  Plaintiff Birgid H. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Income Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 10).

  Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 7, 8). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

I.  **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

>   (4)   if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and
>
>   (5)   if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.   **The ALJ's Decision**

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that there was a continuous twelve-month period after 2018 during which the plaintiff did not engage in substantial gainful activity. (Tr. 17-18).[2] At step two, the ALJ concluded that plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease of the knees, and obesity. (Tr. 18-20). The ALJ also noted that plaintiff suffered from several other impairments but that those impairments were "non-severe." (*Id.*). At step three, the ALJ found that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 20).

---

[2] The administrative transcript (Docket # 6) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

The ALJ concluded that plaintiff retained the RFC to perform sedentary work but with certain limitations. (Tr. 20-26). Specifically, the ALJ found that plaintiff could never climb ladders, ropes, or scaffolds, and could only occasionally climb ramps or stairs, balance, stoop, crouch, kneel, crawl, reach in all directions with her left, non-dominant arm, operate a motor vehicle, and be exposed to moving mechanical parts or unprotected heights. (*Id.*). At step four, the ALJ determined that plaintiff could perform her past relevant work as a payroll manager/accounting clerk and human resources clerk. (Tr. 26-27). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

In formulating the RFC, the ALJ considered and evaluated four medical opinions regarding plaintiff's physical functional capacity issued by different physicians. (Tr. 24-25). On April 23, 2018, consultative physician Nikita Dave, MD, conducted an internal medicine evaluation of plaintiff. (Tr. 371-77). Dave concluded that plaintiff "may" have moderate limitations in maintaining non-neutral cervical spine positions over prolonged periods of time and in gross motor manipulation through the left upper extremity, lifting, carrying, pushing, and pulling. (*Id.*). In addition, Dave opined that plaintiff "may" not be able to maintain her left arm in an overhead position for prolonged periods of time and should avoid ladders and heights due to dizziness possibly related to her thoracic outlet syndrome diagnosis. (*Id.*). The ALJ found Dave's opinion to be "persuasive in part," concluding that the reaching and environmental limitations identified by Dave were supported by plaintiff's abnormal examination findings, as well as the record evidence. (Tr. 25). The ALJ found the remaining limitations identified by Dave "less persuasive," concluding that they were vague and did not provide specific limitations in vocationally relevant terms. (*Id.*).

On June 11, 2018, non-examining consultative physician J. Lawrence, MD, reviewed plaintiff's medical records and Dave's opinion and concluded that plaintiff was capable of lifting up to twenty pounds occasionally and ten pounds frequently, and standing, walking, and/or sitting for up to six hours of an eight-hour workday. (Tr. 70-72). According to Lawrence, plaintiff had no postural limitations, but did have limitations in her ability to reach in all directions with her left arm, and should avoid exposure to environmental hazards, such as machinery or heights. (*Id.*).

Another non-examining consultative physician, Alicia V. Blando, MD, reviewed plaintiff's medical records and rendered an opinion on January 7, 2019. (Tr. 76-82). Blando opined that plaintiff was capable of lifting up to twenty pounds occasionally and ten pounds frequently, and standing, walking, and/or sitting for up to six hours of an eight-hour workday. (*Id.*). According to Blando, plaintiff was unable to climb ladders, ropes or scaffolds, but could frequently climb ramps and stairs, balance, stoop, kneel, and push and pull with her lower extremities, and occasionally crouch and crawl. (*Id.*). Blando also opined that plaintiff did not have any feeling, fingering, or handling limitations, but that she was limited in her ability to reach in all directions, including overhead, with her left arm. (*Id.*). According to Blando, plaintiff should avoid concentrated exposure to extreme cold or workplace hazards. (*Id.*). Blando opined that plaintiff was capable of performing light work with limitations on overhead reaching with her left arm. (*Id.*). The ALJ found the opinions of Blando and Lawrence to be "persuasive in part," agreeing with their assessments that plaintiff should avoid workplace hazards and was limited in her ability to reach with her left arm. (Tr. 24). The ALJ disagreed with Blando and Lawrence that plaintiff was capable of performing the requirements of light work, reasoning that plaintiff's obesity, lower extremity edema, tenderness and reduced range of

motion in her spine, and degenerative changes in both her knees was more consistent with the ability to perform sedentary work. (*Id.*).

On June 7, 2019, treating source James Czyrny, MD, completed a medical source statement evaluating plaintiff's physical functioning. (Tr. 572-77). He opined that plaintiff was able to lift and carry less than five pounds and could sit, stand, or walk for up to two hours of an eight-hour workday due to severe neck pain. (*Id.*). According to Czyrny, plaintiff could only walk for approximately 500 feet before needing a rest and would need to lie down approximately every two to four hours during the day. (*Id.*). Czyrny opined that plaintiff could only rarely perform reaching, handling, or fingering activities, and that she had very limited range of motion in her neck. (*Id.*). He indicated that she was unable to bend, squat, kneel, or travel on her own, and that plaintiff's medication would interfere with her ability to work. (*Id.*). According to Czyrny, plaintiff suffered from constant and chronic disc and myofascial pain, and he believed that she would be unable to work. (*Id.*).

The ALJ concluded that Czyrny's opinion was "not persuasive." (Tr. 25). According to the ALJ, Czyrny failed to support with any objective evidence his "extreme limitation" that plaintiff would have to lie down every two to four hours. (*Id.*). Further, the ALJ concluded that the limitations assessed by Czyrny were inconsistent with the record, including plaintiff's independence with activities of daily living, such as her ability to shop in stores, prepare meals, and complete household chores. (*Id.*). The ALJ also found the assessed limitations inconsistent with the objective physical findings, including normal gait, stable and non-tender joints, and normal strength. (*Id.*).

### III.    Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that she was not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 7). First, plaintiff argues that the ALJ inappropriately "cherry-picked" and relied on only those portions of the medical opinion provided by Dave that were favorable to the ALJ's decision while failing to account for the neck-twisting limitation identified by Dave. (*Id.* at 12-17). Second, plaintiff makes the somewhat related argument that the ALJ's determination to reject the twisting and handling limitations assessed by Dave and Czyrny was based only upon the ALJ's own lay opinion and therefore was not supported by substantial evidence. (*Id.* at 17-20).

### IV.    Analysis

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

8

As both parties recognize, the Commissioner has implemented new regulations relating to the evaluation of medical opinion evidence for claims filed on or after March 27, 2017, which apply here.[3] *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.  Under these new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[,] . . . including those from [a claimant's] medical sources." *Id.* at §§ 404.1520c(a), 416.920c(a); *accord Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, *6 (N.D.N.Y. 2021) ("[a]ccording to the new regulations, the Commissioner will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion") (quotations omitted); *Rivera v. Comm'r of Soc. Sec. Admin.*, 2020 WL 8167136, *14 (S.D.N.Y. 2020) ("the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion") (citation omitted), *report and recommendation adopted by*, 2021 WL 134945 (S.D.N.Y. 2021).  "Instead, an ALJ is now obligated to evaluate the persuasiveness of 'all of the medical opinions' based on the same general criteria: (1) supportability; (2) consistency with other evidence; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) other relevant case-specific factors 'that tend to support or contradict a medical opinion or prior administrative medical finding.'" *Amanda R. v. Comm'r of Soc. Sec.*, 556 F. Supp. 3d 145, 154 (N.D.N.Y. 2021) (footnote omitted) (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5)).

According to the regulations, "supportability" and "consistency" are the "most important" factors in evaluating the persuasiveness of medical opinion evidence.  20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2).  Indeed, "[a]n ALJ is specifically required to

---

[3] Plaintiff filed her claim for DIB on March 13, 2018.  (*See* Tr. 173).

'explain how [he or she] considered the supportability and consistency factors' for a medical opinion," *Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283 at *7 (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)), and need not discuss the remaining factors, *see Rivera v. Comm'r of Soc. Sec. Admin.*, 2020 WL 8167136 at *14. As it relates to the "supportability" factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). With regard to the "consistency" factor, the regulations state that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2). "Where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a 'single analysis.'" *Cory W. v. Comm'r of Soc. Sec.*, 2021 WL 5109663, *4 (W.D.N.Y. 2021) (quoting 20 C.F.R. § 416.920c(b)(1)).

Plaintiff maintains that the ALJ improperly and without explanation rejected the neck-twisting and left arm gross motor limitations assessed by Dave despite finding the opinion to be persuasive, thus warranting remand. (Docket # 7-1 at 12-17). She also contends that the ALJ's determination to reject these limitations, along with the handling and fingering limitations assessed by Czyrny, was based upon her own lay opinion and unsupported by substantial evidence. (*Id.* at 17-20). I disagree.

As an initial matter, plaintiff's submission appears to mischaracterize the opinions submitted by Dave and Czyrny. Plaintiff suggests that Dave opined that plaintiff was "limited [in her] ability to manipulate objects in her hand." (Docket # 7-1 at 16). Nothing in Dave's

10

opinion, however, suggests that she determined that plaintiff was limited in her ability to handle or finger. To the contrary, Dave opined that plaintiff suffered from limitations in her ability to push, pull, carry, and lift with her left arm – limitations that the ALJ accounted for by limiting plaintiff to sedentary work requiring only occasional reaching in all directions with her left arm.[4]

Similarly, plaintiff suggests that Czyrny opined that plaintiff "should never turn her body due to very limited range of motion." (Docket # 7-1 at 16-17). In actuality, Czyrny's opinion does not state that plaintiff should never turn her body; rather, it noted that she might have difficulty turning her neck due to limited range of motion in that area. (Tr. 575).

Turning first to the RFC's lack of an explicit twisting or turning limitation, it is not clear that such a limitation necessarily precludes sedentary work. *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (summary order) ("[a]s the ALJ correctly observed, none of these limitations [including repetitive twisting] preclude [plaintiff's] engagement in at least sedentary exertion") (internal quotations omitted). Thus, it is not clear that the ALJ's RFC assessment is even inconsistent with Dave's and Czyrny's opinions concerning twisting. *See Jeffrey G. v. Comm'r of Soc. Sec.*, 2021 WL 4844146, *10 (N.D.N.Y. 2021) ("[p]laintiff makes much of the ALJ's conclusion that plaintiff retained the ability to turn his head and look up and down, despite [the doctor's] opinion for moderate limitations [in bending and turning his head][;] [h]owever, this court is not convinced that the RFC is inapposite to [the doctor's] opinion").

In any event, even if the assessed twisting limitation necessarily precluded sedentary work, I find that the ALJ's RFC determination is supported by substantial evidence. Accordingly, although the ALJ did not explicitly adopt the twisting limitation assessed by Dave, or explicitly explain why she rejected it, remand is not justified on this basis. Simply stated, "an

---

[4] Although Dave noted that plaintiff declined to use her left index finger when performing zippering, buttoning, and tying activities, she reported that plaintiff was "[a]ble to zipper, button, and tie bilaterally." (Tr. 374).

11

ALJ is not required to adopt a medical opinion in its entirety and may determine an RFC that differs from a medical opinion, where these differences are supported by substantial evidence in the record and are not the product of legal error." *Ferreras-Matos v. Comm'r of Soc. Sec.*, 2021 WL 7287630, *18 (S.D.N.Y. 2021) (collecting cases), *report and recommendation adopted by*, 2022 WL 292921 (S.D.N.Y. 2022); *Jeffrey G. v. Comm'r of Soc. Sec.*, 2021 WL 4844146 at *10 ("[e]ven if the ALJ had effectively rejected a portion of [a medical opinion she found persuasive] in rendering an RFC allowing for head movement, she was under no obligation to accept the consultative examiner's opinion as a whole").

Review of the ALJ's decision demonstrates that she carefully reviewed the medical opinions contained in the record and considered them in light of the record as a whole, including plaintiff's treatment records and her testimony, in finding specific opinion evidence persuasive or less persuasive. In determining that plaintiff was capable of performing a range of sedentary work, the ALJ considered the treatment notes pertaining to plaintiff' cervical impairment. (Tr. 21-23). As noted by the ALJ, plaintiff underwent surgical repairs to her cervical spine in 2009 and 2010. (Tr. 21-22). Following those surgeries, plaintiff routinely received care from Czyrny, who prescribed medications and administered Botox and steroid injections to manage her cervical pain. (Tr. 335-67, 385-90, 392-98, 493-99, 501-509, 511-18, 521-29, 580-604). In his treatment notes, which span several years from 2014 through 2020, Czyrny consistently documented that plaintiff's "neck pain remains under excellent control with the current medications and injection regimen." (*Id.*). Although his notes reflect that plaintiff demonstrated limited range of motion in her cervical spine, Czyrny's neurologic examinations of plaintiff were uniformly normal. (*Id.*). On a handful of occasions, plaintiff reported feeling sore

12

in her shoulders, elbows, and back; however, as noted by the ALJ, the soreness occurred only after plaintiff reported engaging in "extensive work." (Tr. 389, 398, 529).

    The ALJ also noted 2019 imaging of plaintiff's cervical spine, which demonstrated no evidence of surgical hardware failure or significant degenerative changes. (Tr. 23 (citing Tr. 409); *see also* Tr. 558 ("[a]lignment is maintained[;] . . . [v]ertebral body heights and disc spaces are maintained[;] . . . patent neural foramina and facets [are] in appropriate position[;] [o]dontoid appears intact[;] [n]o significant prevertebral soft tissue swelling is seen")). Although a May 2019 EMG suggested evidence of cervical radiculopathy, the ALJ noted that plaintiff reported improved symptoms, including complete relief of radicular symptoms, after receiving physical therapy and using a TENS unit. (Tr. 23 (citing Tr. 534, 601)). The ALJ specifically considered one of plaintiff's most recent medical appointments, during which plaintiff reported that her chronic pain was "not too significant" (Tr. 24 (citing Tr. 630), and she noted that plaintiff's medical records established that conservative interventions recommended by plaintiff's treatment providers, including physical therapy, acupuncture, use of a TENS unit, and heat therapy, reportedly helped to alleviate plaintiff's symptoms (Tr. 23).

    Additionally, the ALJ considered the record evidence concerning plaintiff's ability to perform activities of daily living. (*Id.*). According to the ALJ, the record demonstrated that plaintiff was able to drive independently once a week, shop, care for her own personal hygiene, prepare meals, and complete household chores. (*Id.*). Considering plaintiff's daily activities and her medical history, which demonstrated that her neck pain was well-managed by prescription medication and regular injections, the ALJ concluded that plaintiff's complaints of debilitating cervical pain were not consistent with the record as a whole. (Tr. 23-24).

13

With respect to plaintiff's ability to perform handling and fingering activities, there is little objective evidence in the record to support her allegations of any significant functional limitations. As noted by the ALJ, Dave's examination in 2018 demonstrated decreased sensation in plaintiff's left fingers and slightly reduced grip strength in her left hand. (Tr. 22). Despite these findings, Dave's opinion did not contain any specific limitations for handling and fingering; rather, she opined that plaintiff had moderate limitations for activities including pushing, pulling, carrying, and lifting. (Tr. 374-75). Additionally, the EMG conducted in May 2019 demonstrated evidence of bilateral cervical radiculopathy. (Tr. 23 (citing Tr. 534)). As recognized by the ALJ, plaintiff reported resolution of these symptoms after participating in physical therapy during subsequent medical appointments. (*Id.* (citing Tr. 601)).

Moreover, following plaintiff's cervical surgeries in 2009 and 2010, medical providers repeatedly reported that she demonstrated full strength and sensation. (*See*, *e.g.*, Tr. 280, 283, 286, 291, 436, 464, 563, 613). Indeed, Czyrny's treatment notes, which span several years, reflect minimal complaints by plaintiff of diminished strength or sensation in her left arm and contain objective findings of normal neurological examinations. (Tr. 335-67, 385-90, 392-98, 493-99, 501-509, 511-18, 521-29, 580-604).

After examining the record evidence, the ALJ considered Dave's opinion and determined that it was partially persuasive insofar as it was consistent with record evidence demonstrating that plaintiff was limited in her ability to reach with her left arm and that she should avoid workplace hazards. (Tr. 24-25). She also considered Czyrny's opinion and found it not persuasive because it was inconsistent with the longitudinal medical record and plaintiff's ability to independently engage in a variety of daily activities. (Tr. 25).

In reaching these conclusions, the ALJ also considered the other opinion evidence, including opinions authored by Lawrence and Blando, neither of whom assessed any twisting, handling, or fingering limitations. Rather, they opined that plaintiff had environmental and reaching limitations – limitations that were specifically accounted for by the ALJ in determining the RFC. (Tr. 20, 71-72, 78-79). Thus, in formulating plaintiff's RFC, the ALJ resolved the conflicting medical opinions in the record, which she was permitted to do. *See Ferreras-Matos v. Comm'r of Soc. Sec.*, 2021 WL 7287630 at *18 ("[because] the ALJ considered conflicting opinions in the record on this point, with some doctors finding a limitation for reaching . . . and others not finding any limitation for reaching, the [c]ourt will defer to the ALJ's determination on how to weigh this evidence"). I find that the ALJ adequately explained the reasons underlying her evaluation of the various medical opinions and that substantial evidence supports her determination. *See Kevin Thomas C. v. Comm'r of Soc. Sec.*, 2022 WL 539392, *5 (N.D.N.Y. 2022) ("despite declining to include [the doctor's] mild-to-moderate limitations with[in] the RFC, or discuss why she rejected them, the [c]ourt finds no error[;] . . . [t]he ALJ appropriately explained her rationale in weighing the various medical opinions, the medical treatment evidence, plaintiff's testimony, and activities of daily living"); *Alisa O. v. Comm'r of Soc. Sec.*, 2021 WL 3861425, *4 (W.D.N.Y. 2021) (affirming where ALJ found the consultative examiner's opinion to be persuasive but did not incorporate the head movement, sitting, and reaching limitations assessed by the consultative examiner; "the Commissioner notes that under the new regulations – which are applicable to this case – the ALJ is not required to provide a written analysis about the consideration of each piece of evidence, but rather, the ALJ must provide information sufficient to allow a reviewer 'to trace the path of an adjudicator's

reasoning[;]' [t]he Commissioner argues that the ALJ sufficiently did so here[, and] [t]he [c]ourt agrees") (quoting 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017)).

Contrary to plaintiff's assertions, I do not find that the ALJ improperly "cherry-picked" only those limitations identified in Dave's opinion that supported her findings. (Docket # 7-1 at 12-17). Rather, as explained above, after evaluating the entire record, including the medical records and opinion evidence, the ALJ permissibly identified those limitations that were supported by the record and formulated the RFC based upon the record as a whole. *See Carter v. Comm'r of Soc. Sec.*, 2023 WL 3997262, *2 (E.D.N.Y. 2023) ("[a]s for alleged 'cherry-picking,' an ALJ is permitt[ed] to accept certain conclusions and reject others, so long as [he or she] does [so] with explanation"); *Jordan M. o/b/o Michael M. v. Comm'r of Soc. Sec.*, 2022 WL 17812575, *7 (W.D.N.Y. 2022) ("[a]lthough [p]laintiff asserts the ALJ impermissibly 'cherry-picked' [the consulting] opinion, the ALJ was exercising his duty to formulate [c]laimaint's RFC based on the record as a whole"); *Marvin H. v. Comm'r of Soc. Sec.*, 2021 WL 4427042, *9 (W.D.N.Y. 2021) ("I reject any suggestion that the ALJ's determination to reject [the limitations identified by the consulting physician] constituted improper 'cherry-picking'[;] . . . [r]ather, the record demonstrates that [the ALJ] carefully reviewed the entire record … and declined to adopt those limitations that were unsupported") (internal quotations and brackets omitted); *Cosme v. Colvin*, 2016 WL 4154280, *12 (W.D.N.Y. 2016) (rejecting argument that the ALJ inappropriately adopted only those limitations that supported his ultimate finding where the decision demonstrated that the ALJ carefully considered conflicting evidence and provided the basis for his decision to adopt only portions of the medical opinion).

Based on the record in this case, including the opinion evidence and treatment notes, I find that the ALJ's RFC determination is supported by substantial evidence. *See Matta*

*v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole").  Accordingly, remand is not warranted.

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of DIB was based upon substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED**.  Plaintiff's motion for judgment on the pleadings **(Docket # 7)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
August 7, 2023